1  Alisa A. Martin, State Bar No. 224037
   **AMARTIN LAW, PC**
2  600 West Broadway, Suite 700
   San Diego, CA 92101
3  Telephone: (619) 308-6880
   Facsimile: (619) 308-6881
4
5  Travis K. Jang-Busby, State Bar No. 283256
   **SAN DIEGO COUNTY LAW OFFICES**
   2173 Salk Avenue, Suite 250
6  Carlsbad, California 92011
   Telephone: (760) 206-3566
7  Facsimile: (760) 579-7319

8  *Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

FERERRI D'ANGELO, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

ITOK, INC., a corporation; and FIELD NATION, LLC, a limited liability company,

    Defendants.

**CASE NO.:** '15CV1899 CAB MDD

## CLASS ACTION COMPLAINT

1. FAILURE TO PAY WAGES FOR ALL HOURS WORKED (FLSA 29 U.S.C. SECTION 206)
2. FAILURE TO PAY OVERTIME WAGES (FLSA, 29 U.S.C. SECTION 207)
3. FAILURE TO PAY ALL OWED WAGES (CAL. LABOR CODE AND IWC WAGE ORDERS)
4. FAILURE TO PROVIDE OVERTIME COMPENSATION (CAL. LABOR CODE AND IWC WAGE ORDERS)
5. UNLAWFUL DEDUCTIONS FROM EMPLOYEE PAY (CAL. LABOR CODE §§ 221, 224)
6. FAILURE TO FURNISH TIMELY AND ACCURATE WAGE STATEMENTS (CAL. LABOR CODE §226)
7. FAILURE TO PAY FINAL WAGES (CAL. LABOR CODE §§ 201, 202)
8. UNLAWFUL BUSINESS PRACTICES (CAL. BUSINESS AND PROFESSIONS CODE §17200 *ET SEQ.*)
9. UNLAWFUL DEDUCTIONS FROM EMPLOYEE PAY (MINNESOTA STATUTE 181.79)

**[DEMAND FOR JURY TRIAL]**

Plaintiff, Ferreri D'Angelo ("D'Angelo"), brings this class action complaint against Defendants iTOK, Inc. ("ITOK") and Field Nation, LLC ("Field Nation") based upon information, belief, and personal knowledge, as follows:

## I.
## NATURE OF ACTION

**1.** D'Angelo brings this class action, individually and on behalf of a class of similarly situated employees, to seek redress for Defendants' scheme of misclassifying "Technology Advisors" as independent contractors, resulting in a systematic and class-wide failure to pay for training hours, minimum wages and overtime pay.

**2.** Because Defendants illegally classified their technology advisors as independent contractors when they were actually employees, Defendants willfully violated numerous federal and state laws including but not limited to, the Federal Fair Labor Standards Act ("FLSA"), the California Labor Code, Minnesota Statutes, and other applicable regulations by failing to pay 1) overtime at not less than one and one-half (1½) times the basic minimum hourly rate for all hours worked in excess of forty (40) hours in a workweek, 2) all wages due for the work performed, and 4) minimum wages. Defendants also made unlawful deductions from D'Angelo and the class' regular pay and failed to provide D'Angelo and the class with accurate paystubs.

**3.** Thus, D'Angelo seeks class-wide unpaid wages, actual, incidental, consequential and compensatory damages, pre-and post-judgment interest, attorneys' fees, and costs. To prevent recurrence of this conduct, D'Angelo also seeks injunctive relief on behalf of himself and the classes.

## II.
## JURISDICTION AND VENUE

**4.** This Court has subject matter jurisdiction under 28 U.S.C. §§ 1332(d), 1453, and 1711-1715, the Class Action Fairness Act of 2005, because the amount

in controversy exceeds $5 million and because minimum diversity is met since at least one party (D'Angelo) is diverse from Defendants. D'Angelo is a California resident. ITOK is a Utah corporation that hires employees and conducts business throughout United States. Field Nation is a Minnesota limited liability company that hires employees and conducts business throughout United States.

**5.** This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) over D'Angelo's FLSA claim.

**6.** This Court also has supplemental jurisdiction over D'Angelo's state-law claims pursuant to 28 U.S.C. § 1367.

**7.** Venue in this Court is proper because Defendants regularly conduct business and employ employees throughout the country, including southern California where D'Angelo's claims arose.

### III.
### PARTIES

**8.** D'Angelo is an individual residing in San Diego, California who performed valuable services for Defendants in San Diego County as a Technology Advisor.

**9.** Defendant ITOK is corporation doing business and employing individuals throughout the United States. ITOK provides technical support for computers and other electronic devices by use of remote technical advisors. ITOK's alleged acts were authorized, directed or accomplished by its agents, officers, employees or representatives, while actively engaged in the operation and management of its business.

**10.** Defendant Field Nation is limited liability company doing business and employing individuals throughout the United States. Field Nation acts as broker supplying technologically savvy individuals to companies that have a need for technical services. Field Nation's alleged acts were authorized, directed or accomplished by its agents, officers, employees or representatives, while actively

engaged in the operation and management of its business.

## IV.

## FACTUAL BACKGROUND

11.     In or about late February 2014, D'Angelo applied directly to ITOK for a position as a Technical Advisor.  After reviewing D'Angelo's qualifications, ITOK informed D'Angelo that he could work for the company but that he had to go through Field Nation because Field Nation supplied ITOK with Technical Advisors. ITOK required D'Angelo to create a profile with Field Nation and submit to Field Nation's terms of service. ITOK explained that Field Nation's Technical Advisors were classified as independent contractors.

12.     ITOK used a system in which it contracted with individuals or groups of people referred to as "pods." The pods handled ITOK's day-to-day business objective of providing technical support and maintenance to its customers. ITOK classified the pods and the people working for the pods as independent contractors to avoid payroll taxes and all other obligations owed to employees. Field Nation, for example, was a pod.  ITOK employs approximately 60 Technical Advisors through Field Nation.

13.     On March 6, 2014 ITOK required D'Angelo to attend a mandatory 8-hour training session, but did not compensate him for that time.

14.     Around April 2014 D'Angelo commenced working with ITOK as Technical Advisor. As a Technical Advisor he provided ITOK's customers remote assistance with technical issues and maintenance.

15.     ITOK required D'Angelo and other Technical Advisors to adhere to a restrictive set of policies which included but were not limited to:

    **a.**     A required work week of thirty hours or more;

    **b.**     Set work schedules (D'Angelo's was 3:00 P.M. to 9:00 P.M. Monday through Friday);

    **c.**     Following ITOK's procedures and methodologies when

      undertaking a tasks;

  **d.**  Ensuring his equipment conformed with ITOK's standards;

  **e.**  Performance audits; and

  **f.**  Termination at any time.

**16.** ITOK required Technical Advisors to be logged in to their computers waiting for customers to call for technical support during their assigned shifts. The customer calls are referred to as "tickets." ITOK compensated D'Angelo and other Technical Advisors based on the number of tickets per shift. ITOK paid $18 per ticket regardless of the amount of time it took to complete a task. In fact, some tickets took more than four hours to complete. D'Angelo often only had 2-3 tickets per shift and as a result not paid at least minimum wage. D'Angelo often worked more than eight hours per day and forty hours per week but as a result of ITOK's compensation model, was not compensated for any overtime or at least minimum wage for every hour worked.

**17.** Instead of providing Technical Advisor's paychecks directly, ITOK paid Field Nation the amounts owed for their services. Field Nation deducted 10% from the first one thousand dollars earned plus eight percent of any amount over one thousand dollars from each Technical Advisor's pay before issuing payment. Plus, in March 2015, without notice, Field Nation began to deduct an "insurance charge" from D'Angelo's paychecks.

**18.** D'Angelo did not receive a paystub from ITOK. Field Nation compensated him on a 1099 basis with limited information on his paystub.

**19.** In short, ITOK heavily controlled and directed the people who worked for the pods. It required technicians to attend mandatory training. It also dictated technicians' work hours, work schedules, and payment structure. It also directed the manner in which work was to be performed. It also held out the technicians to it customers as ITOK employees.

**20.** On May 19, 2015 D'Angelo received notice directly from ITOK that

his services were no longer required. He did not receive his final pay until June 1, 2015.

## V.

## CLASS ALLEGATIONS

**21.** **Classes:** This lawsuit is brought on behalf of ascertainable classes consisting of the following:

    **a. FLSA Class**

    All persons who worked for iTOK through Field Nation or any company, often referred to as a "pod," as a Technical Advisor, Consultant, or any other similar position and was classified as an independent contractor at any time since three years preceding the filing of this complaint.

    **b. California Class**

    All persons who worked in California for iTOK through Field Nation or any company, often referred to as a "pod," as a Technical Advisor, Consultant, or any other similar position and was classified as an independent contractor at any time since four years preceding the filing of this complaint.

    **c. Minnesota Class**

    All persons who worked for iTOK through Field Nation as a Technical Advisor, Consultant, or any other similar position and was classified as an independent contractor at any time since two years preceding the filing of this complaint.

**22.** **Numerousity**: The classes are so numerous that joinder of all members is impracticable. Although the precise number is unknown, and the facts are presently within Defendants' sole knowledge, there are at least hundreds of Technical Advisors who provided services to Defendants as of the date this Complaint was filed, making the class sufficiently numerous to warrant

certification.

23. **Commonality**: There are questions of law or fact common to the classes that predominate over any questions affecting individual members. Those questions include but are not limited to the following:

    **a.** whether Defendants misclassified D'Angelo and the classes as independent contractors under FLSA, California, and Minnesota law;

    **b.** whether D'Angelo and the classes are non-exempt employees under FLSA, and California Labor Code;

    **c.** whether Defendants are required to compensate D'Angelo and the classes for training hours, travel hours, studying hours, and other work-related hours under FLSA, California, and Minnesota Law;

    **d.** whether Defendants are required to compensate D'Angelo and the classes minimum wages and overtime under FLSA, California, and Minnesota Law;

    **e.** whether Defendants kept true and accurate time records for all hours worked by D'Angelo and the California Class;

    **f.** whether Defendants made unlawful deductions from D'Angelo and the classes' pay;

    **g.** whether Defendants violated the California Labor Code and the FLSA by failing to pay D'Angelo and the classes all wages, including overtime wages, in the proper pay period;

    **h.** whether Defendants should be enjoined from continuing the alleged wrongful practices in violation of the California Labor Code and applicable regulations.

24. **Typicality**: D'Angelo's claims are typical of the classes' claims because they are all current or former Technical Advisors of Defendants who sustained damages, including underpayment of wages, as a result of Defendants'

common compensation policies and practices. The defenses that likely will be asserted by Defendants against D'Angelo are typical of the defenses that Defendants will assert against the classes.

**25.** **Adequacy**: D'Angelo will fairly and adequately protect the classes' interests because he has no conflicts with the classes' interests and has retained counsel experienced in pursuing complex and class action litigation who will adequately and vigorously represent the classes' interests.

**26.** **Superiority**: Class action treatment is superior to other available methods because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. Absent a class action, there likely will be no lawsuits to recover the unpaid wages due to D'Angelo and the classes because the amounts due and owing to each member are too small to warrant filing individual lawsuits and because members would otherwise be reluctant to file an individual lawsuit, fearing retaliation. This would allow Defendants to retain the benefit of its wrongdoing and continue its conduct.

**27.** Plus, the prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.

**28.** No difficulties will likely to be encountered in the managing this case as a class action, particularly since the classes are readily identifiable from records that Defendants are legally required to maintain.

///
///
///
///

# VI.

# CLAIMS FOR RELIEF

# FIRST CLAIM FOR RELIEF

## Failure To Pay Minimum Wages Under FLSA

### (By FLSA Class Against All Defendants)

**29.** D'Angelo re-alleges and incorporates all preceding paragraphs.

**30.** D'Angelo and the FLSA class were non-exempt employees of Defendants covered by the Title 29 U.S.C. § 203(e)(1) of the FLSA, which states that an employee "means any individual employed by an employer," and that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee."

**31.** Under Title 29 U.S.C. § 206, D'Angelo and the FLSA Class are entitled to receive at least a minimum wage for all hours worked. Under Title 29 U.S.C. § 203(g), "hours worked" includes all hours employees are suffered or permitted to work.

**32.** Defendants had a policy of misclassifying D'Angelo and the FLSA Class as independent contractors and thus willfully failing to pay their minimum wages for all hours worked in violation of Title 29 U.S.C. § 206. D'Angelo and the FLSA Class worked without compensation. Their unpaid hours included the time spent in mandatory training sessions as well as the performance their general job duties.

**33.** As a result, D'Angelo and the FLSA Class suffered damages in an amount, subject to proof, to the extent they were not paid minimum wages for all hours actually worked.

**34.** D'Angelo seeks class-wide compensation for Defendant's unlawful conduct and will take the appropriate steps to notify and join the FLSA Class under 29 U.S.C. § 216(b) via written joinder consents.

35. Under Title 29 U.S.C. §§ 206 and 216(b), D'Angelo and the FLSA Class are entitled to recover the full amount of unpaid minimum wages, liquidated damages, interest thereon, reasonable attorney's fees and costs of suit.

## SECOND CLAIM FOR RELIEF

### Failure To Pay Overtime Wages Under FLSA

### (By FLSA Class Against All Defendants)

36. D'Angelo re-alleges and incorporates all preceding paragraphs.

37. Under Title 29 U.S.C. § 207, D'Angelo and the FLSA Class were entitled to receive overtime at a rate of 1.5 times their regular rate for any hours worked in excess of 40 hours in a week. During their employment for Defendants, D'Angelo and the FLSA class worked over 40 hours in a week.

38. Defendants had a policy and practice of willfully not paying D'Angelo and FLSA Class overtime wages for overtime hours worked. D'Angelo and the FLSA Class worked overtime without compensation. Their unpaid overtime work included the time spent in mandatory training sessions, as well as in the discharge of their regular work duties.

39. As a result, D'Angelo and FLSA Class suffered damages in an amount, subject to proof, to the extent they were not paid a proper overtime rate for all hours they worked over 40 hours in a week.

40. D'Angelo seeks class-wide compensation for Defendants' unlawful conduct and will take the appropriate steps to notify and join the FLSA Class under 29 U.S.C. § 216(b) via written joinder consents.

41. Under Title 29 U.S.C. §§ 207 and 216(b), D'Angelo is entitled to recover the full amount of unpaid overtime wages, interest thereon, liquidated damages, reasonable attorney's fees and costs of suit.

/ / /

/ / /

/ / /

# THIRD CLAIM FOR RELIEF

## Failure to Pay All Hourly Wages Owed

### (By The California Class and Against All Defendants)

**42.** D'Angelo re-alleges and incorporates all preceding paragraphs.

**43.** Defendants had a policy and practice of not compensating employees for all hours worked even though Defendants were obligated to pay them from the moment they were on-duty until they were relieved of all duties. Defendants failed to do this and engaged in practices that resulted in the employees not receiving full compensation for all hours worked.

**44.** Wages are due to employees for "all hours worked" under IWC Order 4-2001 ¶4(a) and applicable California laws, rules, orders, requirements, and regulations. Defendants, however, concocted a scheme to avoid paying employees for all wages earned and all hours worked.

**45.** Wages are due to employees for "all hours worked" under IWC Order 4-2001 ¶4(a) and applicable California laws, rules, orders, requirements, and regulations. D'Angelo and the class are entitled to compensation for the hours deducted from their time records during the class period, and thus request recovery of wages according to proof plus penalties, interest, attorney's fees and costs pursuant to sections 218.5, 510, and 1194 of the California Labor Code, IWC Order No. 4-2001, or any other California statutory, regulatory, or common law authority, as well as the assessment of any other statutory penalties against Defendants, in a sum as provided by the California Labor Code and other applicable California statutes and regulations.

/ / /

/ / /

/ / /

/ / /

/ / /

# FOURTH CLAIM FOR RELIEF

## Failure to Pay Overtime Compensation

### (CA Labor Code §§ 510, 1194)

### (By The California Class Against All Defendants)

**46.** D'Angelo re-alleges and incorporates all preceding paragraphs.

**47.** Pursuant to Section 1194 of the California Labor Code, D'Angelo may bring a civil action for overtime wages directly against the employer on behalf of himself and the class without first filing a claim with the Division of Labor Standards Enforcement. Further, such private actions have the support and approval of the Division of Labor Standards Enforcement.

**48.** Pursuant to Sections 510 and 1194 of the California Labor Code, among other applicable sections, it is unlawful to fail to provide overtime compensations to employees. During and throughout the course of D'Angelo's employment, he and the class were compelled to work in excess of eight (8) hours per workday, in excess of forty (40) hours per workweek, and/or on the seventh day of the workweek.

**49.** On each and every occasion in which D'Angelo and the class were compelled to work in excess of eight (8) hours per workday, in excess of forty (40) hours per workweek, and/or for the first eight (8) hours on the seventh day of the workweek, Defendants, and each of them, failed and refused to compensate D'Angelo and the class at the rate of no less than one and one-half times the regular rate of pay.

**50.** Under the provisions of California's Labor Code and the applicable Wage Orders issued by the Industrial Welfare Commission of California, D'Angelo and the class should have received overtime wages in a sum according to proof for the hours worked.

**51.** D'Angelo requests recovery of overtime compensation according to proof, plus penalties, interest, attorney's fees and costs pursuant to Sections 218.5,

226, 510, 558, 1194, and 1197.1 of the California Labor Code, the relevant California Industrial Welfare Commission Wage Orders, or any other statutory, regulatory, or common law authority, as well as the assessment of any other statutory penalties against Defendants, in a sum as provided by the California Labor Code and other applicable California statutes and regulations.

52. D'Angelo and the class have been deprived of their rightfully earned overtime compensation as a direct and proximate result of Defendants' failure and refusal to pay said compensation. D'Angelo is entitled to recover the unpaid balance of the full amount of the overtime premiums owing, including interest thereon, penalties, reasonable attorney's fees and costs of suit according to the mandate of the California Labor Code.

## FIFTH CLAIM FOR RELIEF

**Unlawful Deductions From Employee Pay**

**(CA Labor Code §§ 221, 224)**

**(By the California Class Against Field Nation)**

53. D'Angelo re-alleges and incorporates all preceding paragraphs.

54. Under California Labor Code Section 221, "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

55. As specified above, Field Nation wrongfully deducted its own business expenses from the wages from D'Angelo and the class without their consent or knowledge.

56. D'Angelo and the class are entitled to recovery of the amounts wrongfully withheld plus interest thereon. In addition to, and entirely independent and apart from, any other penalty provided, every person who unlawfully withholds wages due any employee in violation of Section 212, 216, 221, 222, or 223 shall be subject to a civil penalty as follows:  (a) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (b) For each

subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

57.   D'Angelo and the class are entitled to compensation for the remuneration deducted from their wages during the class period, and thus request recovery of wages according to proof plus penalties, interest, attorney's fees and costs.

## SIXTH CLAIM FOR RELIEF

**Failure to Furnish Timely And Accurate Wage Statements**

**(California Labor Code §226)**

**(By The California Class Against All Defendants)**

58.   D'Angelo re-alleges and incorporates all preceding paragraphs.

59.   California Labor Code § 226(a) requires employers semi-monthly, or at the time of each payment of wages, to furnish each employee with a statement itemizing with the applicable pay rate, the total hours worked by the employee or other basis upon which compensation is determined.  California Labor Code § 226(e) provides that if an employer knowingly and intentionally fails to provide such a statement, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4000).

60.   Defendants failed to comply with California Labor Code § 226(a) because, among other things, they failed to pay employees for all hours worked.

61.   Defendants knowingly and intentionally failed to furnish and continue to knowingly and intentionally fail to furnish D'Angelo and the class with accurate itemized statements, as required by California Labor Code § 226(a).  As a result, Defendants are liable to D'Angelo and the classes for the amounts provided by California Labor Code § 226 in addition to attorney's fees, interest and costs of suit.

# SEVENTH CLAIM FOR RELIEF

## Failure To Pay Final Wages

### (California Labor Code §§ 201 and 202)

### (By The California Class Against All Defendants)

**62.** D'Angelo re-alleges and incorporates all preceding paragraphs.

**63.** As described above, Defendants failed to timely pay D'Angelo and the California Class all wages owed for work performed; and this failure continued through the time in which D'Angelo and the California Class quit or were discharged from their employment with Defendants. As a result, Defendants violated California Labor Code §§ 201 and 202.

**64.** Defendants willfully failed to pay all wages owed, and this failure was not inadvertent or accidental. As such, D'Angelo and the California Class are entitled to 30 days wages, which is calculated under California case law as 30 working days including overtime.

**65.** D'Angelo and the California Class are entitled to compensation for all forms of wages earned, including, but not limited to, compensation for unprovided meal and rest periods, and compensation for work done off the clock and/or at hourly rates below the minimum wage. To date, such compensation has not been received, thus entitling employees to Labor Code § 203 penalties.

**66.** More than 30 days have past since affected California members have left Defendants. On information and belief, these members have not received payment under Labor Code § 203. As a consequence of Defendants' willful conduct in not paying all earned wages to D'Angelo and the California Class who are no longer employed by Defendants, they entitled to 30 days' wages as a penalty under Labor Code § 203 for failure to pay legal wages, together with interest thereon, and attorneys' fees and costs.

/ / /

/ / /

-15-
COMPLAINT

# EIGHTH CLAIM FOR RELIEF

## Unlawful Business Practices

### (California Business and Professions Code §17200 *et seq.*)

### (By The California Class Against All Defendants)

67.     D'Angelo re-alleges and incorporates all preceding paragraphs.

68.     The acts, omissions, and practices of Defendants as alleged herein constitute unlawful and unfair business acts and practices within the meaning of Section 17200, *et seq.* of the California Business & Professions Code.

69.     Throughout the class period, Defendants have engaged in "unlawful" business acts and practices based on the policies and practices described above, including, among other things, their: failure to compensate for all hour worked, failure to compensate for overtime, and failure to provide accurate wage statements.

70.     Throughout the class period, Defendants also engaged in "unfair" business acts or practices in that the harm caused by Defendants' nonpayment of wages. That conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, causes substantial injury to D'Angelo and the class, and provides Defendants with an unfair competitive advantage over those employers that abide by the law and properly compensate their employees in accordance with the law.

71.     D'Angelo reserves the right to allege other violations of California law that constitute unlawful acts or practices.

72.     As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of D'Angelo and the classes. Specifically, Defendants have been unjustly enriched by the retention of wages earned and wrongfully withheld from D'Angelo and the class.

73.     Defendants failed to acknowledge the wrongful nature of their actions. Defendants have not corrected their policies and practices or provided full

restitution and disgorgement of all ill-gotten monies, thereby depriving D'Angelo and the class the minimum working conditions and standards due them under California Labor Laws and IWC Wage Orders.

74. Pursuant to the Section 17203 of the California Business & Professions Code, D'Angelo and the classes seek a court order requiring Defendants to disgorge all ill-gotten gains and awarding D'Angelo and the classes full restitution of all monies wrongfully acquired by Defendants by means of such "unlawful" and "unfair" conduct, plus interest and attorney's fees under Section 1021.5 of the Code of Civil Procedure, so as to restore any and all monies to D'Angelo and the classes and the general public which were acquired and obtained by means of such "unlawful" and "unfair" conduct, and which ill-gotten gains are still retained by Defendants.  D'Angelo and the class additionally request that the Court impound the funds or impose an asset freeze or constructive trust upon the funds.  D'Angelo and the class may be irreparably harmed and/or denied and effective and complete remedy if such an order is not granted.

75. Pursuant to Section 17203 of the California Business & Professions Code, D'Angelo and the classes seek an order of this Court for equitable and/or injunctive relief in the form of requiring Defendants to keep accurate records of time worked, to ensure the payment of earned wages and missed meal and rest break wages, and to ensure future employees are afforded the meal and rest breaks mandated by California law.

### NINTH CLAIM FOR RELIEF
**Unlawful Deductions From Employee Pay**
**(Minnesota Statute 181.79)**
**(By The Minnesota Class Against Field Nation)**

76. D'Angelo re-alleges and incorporates all preceding paragraphs.

77. Under Minnesota Statute 181.79 employers are prohibited from deducting wages from employees for losses connected with and employees duties

without prior written consent. Under Minnesota Statute 177.24 any deductions from an employee's wages are to be returned upon termination or resignation.

78. As specified above, Field Nation wrongfully deducted its own business expenses from the wages from D'Angelo and the Minnesota class without their consent or knowledge.

79. D'Angelo and the Class are entitled to compensation for the remuneration deducted from their wages during the class period, and thus request recovery of wages according to proof plus penalties, interest, attorney's fees and costs.

## VII.
## **PRAYER FOR RELIEF**

80. WHEREFORE, D'Angelo and the classes request the following relief:

 **a.** An order certifying the classes and designating D'Angelo as the Class representative and his counsel as Class counsel;

 **b.** That the Court preliminarily and permanently enjoin Defendants from engaging in the conduct alleged herein;

 **c.** Other injunctive and declaratory relief as may be appropriate;

 **d.** Restitution and disgorgement of any ill-gotten profits from Defendants to the extent permitted by applicable law, together with interest thereon from the date of payment;

 **e.** For Liquidated damages according to proof;

 **f.** For Statutory damages according to proof;

 **g.** For general damages according to proof;

 **h.** For special damages according to proof;

 **i.** For exemplary or punitive damages;

 **j.** A declaration that Defendants are financially responsible for notifying the classes about the pendency of this action;

 **k.** Reasonable costs and attorneys' fees;

    **l.** Statutory pre-judgment interest; and

    **m.** For such other relief as the Court may deem proper.

## VIII.

## DEMAND FOR JURY TRIAL

**81.** D'Angelo on behalf of himself and the classes demands a jury trial.

Dated: August 28, 2015    AMARTIN LAW, PC
                                    SAN DIEGO COUNTY LAW OFFICES

                                    By: /s/ *Alisa A. Martin*

                                    Alisa A. Martin
                                    Attorneys for the Plaintiff and the Class