1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

D'ANGELO FERRERI, on behalf of himself and all others similarly situated,

Plaintiff,

v.

BASK TECHNOLOGY, INC. (formerly named iTOK, INC.), a corporation; and FIELD NATION, LLC, a limited liability company,,

Defendants.

Case No.:  15-CV-1899-CAB-MDD

**ORDER DENYING MOTION TO APPROVE SETTLEMENT AND MOTION FOR ATTORNEYS' FEES**

[Doc. Nos. 66, 67]

This matter is before the Court on the parties' "Joint Motion for FLSA Collective Action Settlement Approval, Final Certification, and Authorization to Effectuate Settlement," and Plaintiff's unopposed application for attorneys' fees and costs and Plaintiff incentive award.  No opposition or objection to the motion was filed, and the Court held a hearing on November 18, 2016.  For the reasons set forth below as well as those stated at the hearing, both motions are denied.

## I.    Background

Defendant Bask Technology, Inc., provides remote technical support for homes and businesses.  According to the SAC, the specific individuals who provided this support for Bask's customers are called Remote Technical Advisors ("RTAs").  In September 2013, Plaintiff D'Angelo Ferreri contacted Bask about becoming a RTA.  Bask allegedly told Plaintiff that he could become an RTA, but that he had to go through Defendant Field Nation, LLC.  Field Nation is one of several third-parties, referred to as "pods," that Bask used to obtain RTAs to perform the support work for Bask's customers.  Ferreri proceeded to apply with Field Nation and eventually became an RTA for Bask, which entailed working shifts where he would have to be logged into his computer and ready to respond to Bask customers' calls for technical support, referred to as "tickets."  Bask paid Field Nation $18 per completed ticket, and Field Nation would pay Ferreri on a per ticket basis after deducting certain fees from the amount received from Bask.  Ferreri was classified as an independent contractor and paid on a 1099 basis.

The Second Amended Complaint ("SAC") alleges that Ferreri and all RTAs who performed work for Bask customers were improperly classified as independent contractors instead of employees and as a result not paid a minimum wage or overtime.  To that end, the SAC asserts two FLSA claims and various claims under California's labor and unfair business practices laws on behalf of Plaintiff and one putative FLSA collective and two putative Federal Rule of Civil Procedure 23 classes.  In addition to Bask, the complaint named Field Nation, LLC, as a defendant.  The SAC estimated the existence of "at least a few hundred RTAs" as class members and alleged that the amount in controversy exceeded $5 million.  [Doc. No. 34 at ¶¶ 5, 22.]  In or around February 2016, Ferreri settled with Field Nation for a payment of $6,000.

On February 24, 2016, Plaintiff filed a motion for conditional certification of a collective action for the two FLSA claims consisting of all RTAs who performed worked for Bask through any "pod" (not limited to Field Nation) and were classified as independent contractors.  The motion contained a proposed notice to potential collective members

which specified that "Plaintiff also asserts claims under California law, but those claims are not subject to this notice." [Doc. No. 32-2 at 2.] The Court granted the motion in part, conditionally certifying a significantly narrower collective than the one sought by Plaintiff. The collective included:

> All persons who contracted with Field Nation, LLC, to perform work for Bask Technology, Inc. (formerly named iTOK, Inc.), or Bask/iTOK's customers, as a Technical Advisor, Technical Support Representative, Support Technician or in any other similar position that provided remote technical services and were classified as an independent contractor within three years preceding the date of their decision to opt-in to this action.

On October 14, 2016, Plaintiff's counsel, Lindsay David, filed a declaration (the "David Declaration") listing 35 individuals who she claims submitted their consent to join the conditional collective action.[1]

Also on October 14, 2016, Ferreri filed the instant motions seeking approval of a "Collective Action Settlement Agreement and Release" and attorneys' fees. The settlement agreement purports to be between Bask and Ferreri, "on behalf of himself and all those who opted-in to the conditionally certified collective action by executing a Consent to Join Form." [Doc. No. 66-3 at 1.] The settlement agreement states that 34 individuals consented to join as collective members. [*Id.*] Further, the putative collective members includes two names not listed on the David Declaration and omits three names listed on the David Declaration.

According to the settlement agreement, Bask has agreed to pay a gross settlement amount of $117,969.57, allocated as follows: $39,616.75 to the settlement members for their claims; $2,000 as an incentive award for Ferreri; and $75,000 to Plaintiff's counsel;

---

[1] This declaration does not comply with the opt-in requirement of the FLSA, which states that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party *and such consent is filed in the court in which such action is brought*." 29 U.S.C. § 216(b) (emphasis added); *see also Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv660-HSG, 2016 WL 4073336, at *9 (N.D. Cal. Aug. 1, 2016). No written consents for the collective members have been filed with the Court. Plaintiff may correct this deficiency by filing the returned opt-in forms with the Court.

and $1,352.82 in costs.  The agreement includes an exhibit specifying the amount each settlement member would receive under the settlement, but does not specify how those amounts were calculated.  The median payment to the 34 collective members identified on the exhibit to the settlement agreement is $447.75, while the payments to the three highest paid collective members (one of which is Ferreri) constitute almost 63% of the total collective payment.  Only nine collective members receive more than $750.00 under the settlement, and six collective members receive just $59.30.  In exchange for these payments, the settlement agreement contains the following release and covenant not to sue:

> Conditioned upon Court approval of the settlement and dismissal of the case with prejudice, Opt-In Members, individually and in their representative capacity, for themselves and their heirs, successors, assigns, personal representatives, executors, legal representatives, spouses, agents, insurers, and attorneys, do hereby release and discharge Defendant and its current and former parents, subsidiaries, affiliates, successors, predecessors, assigns, officers, directors, shareholders, associates, employees, agents, insurers, attorneys, and representatives (collectively, "the Released Parties"), of and from any and all claims, rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind (including any and all claims or demands for attorneys' fees and costs), which were or could have been asserted in the Action, or arising out of the same or similar factual allegations, under the Fair Labor Standards Act or California wage and hour laws, of any kind or nature that arose or accrued at any time during the period from June 1, 2012, through the date of this Agreement, for any type of wages, overtime, hours worked, misclassification as independent contractors, premium pay, damages, statutory damages, liquidated damages, unpaid costs, statutory penalties, civil penalties, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.  Opt-In Members further covenant not to sue Defendant or the Released Parties for any and all such released claims.

[Doc. No. 66-3 at 3.]

## II.   Legal Standard

"The FLSA, 29 U.S.C. § 201 et seq., was enacted 'to protect all covered workers from substandard wages and oppressive working hours.'" *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999) (quoting *Barrentine v. Arkansas–Best Freight Sys., Inc.*,

450 U.S. 728, 739 (1981). "The FLSA's minimum wage and overtime provisions are central among the protections the Act affords to workers. Section 6 of the FLSA mandates payment of a minimum wage and section 7 sets maximum hours ('the overtime limit'), which, when exceeded, requires the payment of overtime wages." *Id.* (citing 29 U.S.C. §§ 206, 207)). "An employer who violates the FLSA 'shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Flores v. City of San Gabriel*, 824 F.3d 890, 904–05 (9th Cir. 2016) (quoting 29 U.S.C. § 216(b)).

"Settlement of an FLSA claim, including a collective action claim, requires court approval." *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); *see also Dunn v. Teachers Ins. & Annuity Assoc. of Am.*, No. 13-cv-5456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) ("Most courts hold that an employee's overtime claim under FLSA is non-waivable and, therefore, cannot be settled without supervision of either the Secretary of Labor or a district court."). Because the Ninth Circuit has not established a standard for district courts to follow when evaluating an FLSA settlement, California district courts frequently apply the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982). *Dunn*, 2016 WL 153266, at *3. Under that standard, the relevant considerations are whether the named plaintiff is "similarly situated" to the collective members and whether the settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 29 U.S.C. § 216(b); *Lynn's Food Stores*, 679 F.2d at 1355; *see also Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 3924609, at *1 (S.D. Cal. Aug. 11, 2014) ("A district court may approve an FLSA settlement if the proposed settlement reflects 'a reasonable compromise over [disputed] issues.'") (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

Although the standard for approving FLSA collective actions may be nominally different from the standard for approving class actions under Federal Rule of Civil

Procedure 23, "many courts begin with the well-established criteria for assessing whether a class action settlement is fair, reasonable and adequate under [Rule] 23(e) and reason by analogy to the FLSA context." *Millan v. Cascade Water Servs., Inc.*, No. 1:12-cv-1821-AWI-EPG, 2016 WL 3077710, at *3 (E.D. Cal. Jun. 2, 2016) (internal quotation marks omitted); *see also Otey v. Crowdflower, Inc.*, No. 12-cv5524-JST, 2014 WL 1477630, at *11 (N.D. Cal. Apr. 15, 2014) ("[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a Rule 23 settlement.").[2] Those Rule 23 criteria include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Otey*, 2014 WL 1477630, at *4 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

## III.   Discussion

The proposed settlement in this case contains numerous deficiencies that preclude a finding that the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.  In short, the inconsistencies among (1) the terms of the proposed settlement agreement, (2) the identity of the opt-in collective members, (3) the extent of Plaintiff's counsel's representation of the opt-in members, and (4) the claims in the SAC as compared with the claims being released in the settlement agreement, make it impossible to determine what the settlement encompasses and what is happening to the claims in the complaint that are not included in the settlement, if any.  Moreover, the agreed upon

---

[2] *But see Selk v. Pioneers Mem. Healthcare Dist.*, 159 F.Supp. 3d 1164, 1173 (S.D. Cal. 2016) (evaluating an FLSA settlement using a totality of the circumstances approach "that replicates the factors relevant to Rule 23 class actions where appropriate, but adjusts or departs from those factors when necessary to account for the labor rights at issue.")

distribution of Bask's settlement payment includes a grossly unreasonable share for Plaintiff's counsel.  Any one of these deficiencies precludes approval of the settlement.

### A.    Settlement and Release of California Claims

First, though labeled a "collective action" settlement, the settlement action includes a release of state law claims and, according to the approval motion, includes payment to three individuals specifically for their California state law claims.  These state law claims are ostensibly Rule 23 class action claims based on the complaint, but they do not qualify for class action certification here because with only three individuals receiving payment to release their claims, the numerosity requirement is not satisfied.  More importantly, neither Ferreri nor Plaintiff's counsel represents any of the opt-in collective members with respect to the California claims and did not have authority to enter a settlement of those claims on the individuals' behalf.[3]  If these three individuals (the motion papers do not identify the names of the individuals receiving a payment from Bask for California claims) want Ferreri's counsel to represent them on their California claims as well, they are free to retain them as counsel, and are also free to settle their claims with Bask.  However, such a settlement would not be on a class-wide basis and would not be subject to court approval.  Alternatively, Ferreri and Bask are free to settle the California law claims on a class-wide basis and then follow the procedures under Rule 23 for approval of such a settlement.  *Otey*, 2014 WL 1477630, at *10 ("When an FLSA collective action and a Rule 23 class action are proceeding in the same case, courts require the parties to show that the certification requirements for a Rule 23 class action are satisfied.").   Either way, as things currently stand, neither Ferreri nor Plaintiff's counsel have authority to bind the three individuals receiving a payment for their California claims, or any of the opt-in collective members, to a release of any California claims absent certification of a Rule 23 class action to which they are class members.

---

[3] As discussed above, the opt-in notice to the FLSA collective specified that it only concerned the FLSA claims.

Along the same lines, the settlement agreement purports to release California claims of all but the three California collective members in exchange for no consideration whatsoever from Bask.  However, neither Ferreri nor counsel represent these individuals either with respect to non-FLSA claims.  Indeed, the SAC arguably did not even assert any claims under California labor laws on behalf of these non-California RTAs because they did not fall into the SAC's definition of "California Class."  Settlement agreements with broad releases going beyond the FLSA violations are frequently rejected.  *See Kempen*, 2016 WL 4073336, at *9; *see also Dunn*, 2016 WL 153266, at *5 ("Courts in this district routinely reject FLSA settlements when the scope of the release goes beyond the overtime claims asserted in the complaint.").  Moreover, "[n]o one should have to give a release and covenant not to sue in exchange for zero (or virtually zero) dollars." *Daniels v. Aeropostale West, Inc.*, No. C 12-5755 WHA, 2014 WL 2215708, at *3 (N.D. Cal. May 29, 2014); *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F.Supp. 3d 1164, 1178 (S.D. Cal. 2016) ("Only when opt-in plaintiffs receive independent compensation, or provide specific evidence that they fully understand the breadth of the release, will a broad release of claims survive a presumption of unfairness.").  Yet, that is exactly what Plaintiff's counsel asks the Court to approve here as all but three of the collective members are releasing California claims in exchange for no consideration.  Accordingly, because the release goes far beyond the FLSA claims asserted in this lawsuit, the settlement is not fair and reasonable.

## B.    Uncertainty About Rule 23 Class Claims and PAGA Claim

The settlement also ignores the Rule 23 class action claims in the SAC for individuals who did not opt-in to the FLSA collective action as well as the claim for penalties under California's Private Attorney General Act, Cal. Labor Code § 2699 *et seq* ("PAGA").  The SAC asserts class claims on behalf of much broader classes than the 34 or 35 individuals who opted-in to the FLSA collective action or who would receive payment from Bask in this settlement.  The settlement agreement and the instant motion, meanwhile, imply that this case should be dismissed in its entirety upon approval of the settlement.  It is unclear from the record what the parties intended with respect to the

California class claims and whether counsel reached this settlement to the detriment of absent putative class members. *Cf. Daniels*, 2014 WL 2215708, at *5 ("The Supreme Court has warned of the problems with an attorney who currently represents another class against the same defendant. This is because defendants have an incentive to settle all claims at once, if it settles at all, thereby creating opportunities for counsel to manipulate the allocation of settlement dollars to the detriment of absent class members.") (internal citation omitted). For example, the Court is concerned that Plaintiff's counsel settled the California claims of the three opt-in FLSA members to the detriment of the other 31 opt-in members who are nevertheless releasing their California claims in the settlement agreement.

Likewise, it is unclear whether the parties are settling the PAGA claims as well and whether any such settlement is reasonable. PAGA claims are unique because "where plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment." *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2016 WL 4398271, at *18 (N.D. Cal. Aug. 18, 2016). "The Court must be cognizant of the risk that despite this responsibility, there may be a temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip, wherein the rights of individuals who may not even be members of the class and the public may be waived for little additional consideration in order to induce the employer to agree to a settlement with the class." *Id.* Thus "in reviewing a settlement that includes both a Rule 23 class and a PAGA claim, the Court must closely examine *both* aspects of the settlement . . . . [T]he Court must evaluate the adequacy of compensation to the class as well as the adequacy of the settlement in view of the purposes and policies of PAGA." *Id.* Here, the settlement possibly results in a waiver of all PAGA claims in exchange for no compensation. Such a settlement would not be a reasonable and fair resolution of FLSA claims.

1

### C.      The Identity of the Opt-In Members is Not Clear

Next, the identity of the settlement class members listed in the attachment to the settlement agreement is not identical to the list of opt-in members identified in Plaintiff's counsel's declaration.  James Keenan Lake and Ronald Terry are identified on Exhibit 1 to the settlement agreement but not on the David Declaration.  Rachel Patterson, Nikki Raeburn, and Ronald Toney are identified on the David Declaration but not on Exhibit 1 to the settlement agreement.  This discrepancy is not explained and leaves unclear who is a member of the collective action and whose claims are being released in the settlement agreement.  Moreover, it could lead to the unfair result that Patterson, Raeburn and Toney would be bound by the settlement as opt-in collective members, but not receive any compensation.  Accordingly, this is yet another reason why the Court cannot approve of the settlement.

### D.      Attorney's Fee Request

The attorney's fee component is possibly the most glaring deficiency that renders the settlement unreasonable for the opt-in members.  Pursuant to the FLSA, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  "The 'case law construing what is a "reasonable" fee applies uniformly' to all federal fee-shifting statutes." *Haworth v. State of Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).  "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" to determine a reasonable attorney's fee.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1042, 1047 (9th Cir. 2002); *see also Bluetooth*, 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method.").  Thus, courts frequently use the percentage-of-recovery method either by itself or in conjunction with confirming that the lodestar is consistent with the 25% percentage-of-recovery benchmark to determine the reasonableness of fees for FLSA common fund

settlements.  *See, e.g., Selk*, 159 F.Supp. 3d at 1180 (evaluating FLSA settlement fee award using percentage-of-recovery method); *Jones v. Agilysis, Inc.*, No. C 12-03516 SBA, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (approving fee award as consistent with the 25% "benchmark"); *Otey*, 2014 WL 1477630, at *7-8 (analyzing fees using lodestar and percentage of recovery methods).

Here, the settlement agreement allocates $75,000 of the $116,616.75 gross settlement amount to Plaintiff's counsel.  Plaintiff's counsel argues that a $75,000 fee award is reasonable in part because it was negotiated with and agreed to by Bask separately from the payment to the collective members.  However, the terms of the settlement agreement along with the minute entry on the docket indicating that the case settled at a settlement conference with the Magistrate Judge implies that the fee amount was little more than one component of the overall settlement of the case.[4]  In any event, "[t]hat the

---

[4] Negotiation of attorneys' fees simultaneously with the settlement payments to the plaintiffs "raises the specter of collusion because it suggests that Plaintiffs' counsel may have been motivated to undercut their clients' (and the putative class's) recovery in order to quickly generate higher attorneys' fees for themselves."  *Dunn*, 2016 WL 153266, at *8; *see also* 2 McLaughlin on Class Actions § 6.4 (12th ed. revised 2015) ("Courts also have identified a special danger of collusiveness when the attorney fees, ostensibly stemming from a separate agreement, were negotiated simultaneously with the settlement.") (internal citation and quotation omitted).  Although the involvement of the Magistrate Judge weighs against the likelihood of collusion, considering the fact that Plaintiff's counsel are asking for almost twice as much in fees as the opt-in members are receiving in total, Plaintiff still must do a better job demonstrating "that the settlement is 'not [] the product of collusion among the negotiating parties.'  *Bluetooth.*, 654 F.3d at 947 (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458).

Indeed, the agreement here appears to include several indicia of subtle collusion identified by the Ninth Circuit, including:

(1)      "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," *Id.* (quoting *Hanlon*, 150 F.3d at 1021);

(2)      "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class,'" *Id.* (quoting *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000)); and

(3)      "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund," *Id.* (citing *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (Posner, J.)).

defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003). "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have obtained." *Id.* The requested fee award is unreasonably high here and warrants particularly careful scrutiny.

Plaintiff's counsel also argues that its requested fee is reasonable because it equals 75% of the lodestar which is consistent with the collective members' recovery of 75% of their total possible damages in this case.[5] This argument is disingenuous considering that counsel were largely unsuccessful on the overwhelming majority of the claims alleged in the SAC. The SAC asserts claims on behalf of one collective and two putative classes of several hundred members and claimed that the amount in controversy exceeded $5 million. A settlement where an opt-in collective of 34 or 35 receives a total payment of $41,616.75 hardly constitutes a successful result of such a lawsuit. Further, the much larger intended scope of the litigation at the outset as compared with the narrow proposed settlement necessarily means that many of counsel's hours were unrelated to the FLSA claims being settled. Counsel nevertheless counted all of their hours in this litigation when calculating their lodestar. Thus, the number of hours used for Plaintiff's lodestar calculation is grossly inflated rendering counsel's lodestar total of over $100,000 in fees of little assistance to the Court in determining a reasonable fee. *Cf. Hensley v. Eckerhart*, 461 U.S. 424, 439 (1983) (holding that when determining what constitutes a "reasonable attorney's fee" in a federal civil rights action "where the plaintiff achieved only limited success, the district

---

[5] Counsel's representation that the collective members are receiving 75% of their total possible recovery in this lawsuit is difficult to reconcile with the allegations in the SAC that over $5 million is in controversy. If the parties file a new motion for approval of a settlement, they will need to provide evidentiary support for any representations as to the percentage recovery being obtained by the collective.

court should award only that amount of fees that is reasonable in relation to the results obtained."); *see also Otey*, 2014 WL 1477630, at *9 (noting that a settlement representing approximately 50% of the back wages owed to "102 out of millions of class members [was a] significant limitation on the relief Plaintiffs originally sought, which may warrant a reduction in the fees requested").

Further, likely because the requested fee award is so excessive and inconsistent with the amounts awarded in other FLSA collective actions or wage and hour class actions, counsel does not acknowledge the cross-check with the percentage-of-recovery method typically performed when evaluating the reasonableness of a lodestar fee award in the context of a common fund settlement.  Plaintiff's counsel argues that this is not a common fund settlement, but the plain language of the settlement agreement states that Bask is paying $116,616.75 as the "gross settlement amount" from which the $75,000 attorney fee award will be paid.  Moreover, whether Plaintiff is technically correct is immaterial.  Even assuming the settlement payment "is represented as two separate payments, one to the class members, and one to Plaintiffs' attorneys . . ., the Court considers all payments that Defendants will make as coming out of one constructive common fund." *Otey*, 2014 WL 1477630, at *9

The requested fee award is almost two-thirds of the total settlement amount being paid by Bask.[6]  The Court was unable to find any case where the fees equaled even close to such a large proportion of the total settlement payment.[7]  Such an award is not reasonable

---

[6] In reality, the portion of the settlement payment to the collective for the individual state law claims of three collective members should not be considered when calculating the percentage-of-recovery for the FLSA collective as a whole, meaning the fee award constitutes an even larger percentage of the overall recovery.

[7] *See, e.g., Millan*, 2016 WL 3077710, at *3 (awarding $50,000 in fees from a $150,000 gross settlement amount in case that was litigated for almost four years and where the lodestar was $68,190); *Jones*, 2014 WL 2090034, at *2 (approving fee award of 25% of the gross settlement amount of nationwide FLSA collective action while noting that the lodestar was over three times the requested amount); *Otey*, 2014 WL 1477630, at *9 (denying motion for approval of settlement where counsel would receive $435,000 of a $585,507 gross settlement amount, noting that the requested 74.3% of the total recovery "grossly exceed[ed] the 25% benchmark").

considering the narrow settlement and general lack of success by Plaintiff's counsel. Accordingly, if the parties are able to re-work their settlement, Plaintiff must explain how it is reasonable for any attorney's fees to constitute more than 25% of any total settlement payment by Bask, let alone two-thirds.

### E.   Incentive Award to Ferreri

Finally, Ferreri asks for an incentive award of $2000.  "Although incentive awards are not specifically authorized under the FLSA, they are generally authorized as a matter of the court's discretion." *Jones*, 2014 WL 2090034, at *3.  Considering the early stage of litigation at the time of settlement and the minimal value obtained for the collective, the incentive award requested for the named plaintiff is excessive.  Although the motion does not specify how much of the settlement payment to the collective is attributable to state law claims, it appears likely that the total settlement payment attributable to the FLSA claims is less than $30,000, of which Ferreri is already receiving a significant portion, in addition to his separate $6,000 settlement with Field Nation.  Ferreri claims he spent 20 hours on this case, but based on his description of that work in his declaration, much of it was unnecessary to the prosecution of the case.  Moreover, there is no explanation as to why Ferreri's time should be compensated at $100 per hour or why the incentive award should be substantially more than all but two of the collective members are receiving in the settlement.   Thus, based on the information before the Court, the requested incentive award is not reasonable.

### IV.   Conclusion

For all of the foregoing reasons, as well as those discussed at the hearing, the motion to approve the settlement and the motion for attorney's fees and incentive award are both denied.  The parties are free to file a new motion for approval of a settlement that addresses the deficiencies identified in this order on or before **December 19, 2016**.  In addition, the parties shall contact Magistrate Judge Dembin's chambers within two days of the date of this order to request a case management conference for a time he is available in early

January 2017.  If a new motion for settlement approval is filed by December 19, 2016, the parties may request that Magistrate Judge Dembin vacate the case management conference.

It is **SO ORDERED**.

Dated:  November 21, 2016

_____
Hon. Cathy Ann Bencivengo
United States District Judge