Alisa A. Martin, State Bar No. 224037
**AMARTIN LAW, PC**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone:  (619) 308-6880
Facsimile:  (619) 308-6881
alisa@amartinlaw.com

Lindsay C. David, State Bar No. 283267
**SAN DIEGO COUNTY LAW OFFICES**
2173 Salk Avenue, Suite 250
Carlsbad, California 92011
Telephone: (760) 206-3566
Facsimile:  (760) 579-7319
lcdavid@sdlawoffices.com

*Attorneys for Plaintiff*
D'ANGELO FERRERI

Bryan K. Benard, State Bar No. 192630
**HOLLAND & HART**
222 South Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone:  (801)799-5800
Facsimile:  (801)799-5700
bbenard@hollandhart.com

*Attorneys for Defendant*
BASK TECHNOLOGY, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D'ANGELO FERRERI, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>BASK TECHNOLOGY, INC. (formerly named iTOK, INC.), a corporation; and FIELD NATION, LLC, a limited liability company,]<br><br>            Defendants. | Case No. 15cv1899-CAB-MDD<br><br>**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FLSA COLLECTIVE ACTION SETTLEMENT APPROVAL, FINAL CERTIFICATION, AND AUTHORIZATION TO EFFECTUATE SETTLEMENT**<br><br>Date: January 23, 2017<br>Courtroom: 4C<br>The Hon. Cathy Ann Bencivengo<br><br>Complaint Filed: August 28, 2015<br>Trial Date: None Set<br><br>PER CHAMBERS RULES, NO ORAL |

1  |  ARGUMENT UNLESS

2  |  SEPARATELY ORDERED BY THE COURT.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION _____ 1

II.   BACKGROUND _____ 3

  A.   Ferreri's Alleged Claims Against Bask _____ 3

  B.   Conditional Collective Certification _____ 4

  C.   Discovery, Settlement Discussions, And Settlement Conference _____ 6

III.   KEY SETTLEMENT TERMS _____ 8

  A.   Payments To Settlement Members _____ 8

    1.   Summary _____ 8

    2.   Calculations _____ 11

      a)   Unpaid Training Hours _____ 11

      b)   Unpaid Minimum Wage _____ 11

      c)   Unpaid Overtime _____ 12

      d)   Liquidated Damages _____ 13

    3.   Payment Classification _____ 13

  B.   Release and Covenant Not to Sue _____ 13

  C.   Dismissal of All Remaining Claims _____ 14

  D.   Procedures For Informing Opt-In Members About Settlement and
Distributing Settlement Checks _____ 14

IV.   APPROVAL OF THE PROPOSED SETTLEMENT IS WARRANTED ___ 15

  A.   Standard _____ 15

  B.   Settlement Members Are Similarly Situated_____ 16

  C.   Bona Fide Dispute Existed _____ 17

  D.   Fair and Reasonable Settlement Agreement _____ 17

    1.   The Strength of The Case _____ 18

    2.   The Risk, Expense, Complexity, and Likely Duration _____ 18

    3.   Continued Litigation Involves Risk of Decertification_____ 18

    4.   Settlement Members Receive Fair and Appropriate Compensation_____ 19

    5.   Significant, Targeted Discovery Completed_____ 19

    6.   Counsel's Experience and Views _____ 19

    7.   No Presence of a Governmental Participant _____ 20

    8.   Settlement Members React Positively to the Settlement _____ 20

V.   REQUESTED FEES ARE REASONABLE _____ 20

VI.   REQUESTED COSTS ARE REASONABLE _____ 21

VII.   CONCLUSION _____ 21

# TABLE OF AUTHORITIES

**CASES**

*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) _____ 14

*Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 U.S. Dist. LEXIS 11676 (C.D. Cal. Jan. 27, 2011) _____ 19

*Deane v. Fastenal Co.*, 2013 U.S. Dist. LEXIS 163330 (N.D. Cal. Nov. 14, 2013) ___ 15

*Fleury v. Richemont N. Am. Inc.,* , 2008 WL 3287154 (N.D. Cal. Aug. 6, 2008) _____ 19

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) _____ 17

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) _____ 20

*In re Omnivision*, 559 F.Supp.2d 1036 (N.D. Cal. 2008) _____ 20

*In re Wash. Pub Power Supply Sys. Sec. Litig.*, 720 F.Supp. 1379 (D. Ariz. 1989) ___ 19

*Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375 (1994) _____ 20

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ____ 14, 15, 16

*Otey v. Crowdflower, Inc.*, 2015 U.S. Dist. LEXIS 86712(N.D. Cal. July 2, 2015) ___ 15

*Selk v. Pioneers Memorial Healthcare Dist,* 159 F. Supp. 3d 1164 (2016) _____ 19

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) _____ 20

**STATUTES**

29 U.S. Code § 216 _____ 4, 8, 9

Cal. Labor Code § 1194.2 _____ 4

Cal. Labor Code § 203 _____ 4

Cal. Labor Code § 226 _____ 4

## I.     INTRODUCTION

This is a conditionally certified FLSA collective action regarding the alleged misclassification of employees as independent contractors. Defendant Bask Technology, Inc. — formerly named iTOK, Inc. ("Bask") provides remote technical support for homes and businesses. Plaintiff D'Angelo Ferreri alleges that all Remote Technical Advisors (RTAs) for Bask through Field Nation were misclassified as independent contractors rather than employees.  As a result, he alleges that RTAs were not paid for six hours of training time, some RTAs were not paid minimum wages, and if RTAs worked over 40 hours during a workweek, were not paid overtime wages. Bask denies any wrongdoing. The Court conditionally certified the matter under the FLSA.

Thirty-four individuals joined. ("Opt-In Members") (Ferreri and the Opt-In Members are collectively referred to as "Settlement Members"). To avoid protracted litigation and expense — particularly in light of the number of Opt-In Members and amount of potential damages at-issue — the parties engaged in informal discovery to calculate potential damages if the Settlement Members had been misclassified, and then participated in a Settlement Conference with Magistrate Judge Dembin where a settlement was reached. The proposed settlement resolves FLSA claims only and through negotiation covers a three-year, rather than two-year, statute of limitations period. Under the agreement, Settlement Members receive approximately 100% of their estimated potential unpaid wages, approximately 50% of their estimated potential liquidated damages, and Ferreri's counsel receives, if awarded, $9,500 in fees and $1,352.82 in costs.

Upon approval of this revised proposed settlement, Ferreri will dismiss all remaining claims, which concern unpaid wages under California law.  Ferreri's counsel formally represents Ferreri and the two other Settlement Members who have California claims against Bask.  Those members have entered into separate settlement agreements with Bask to resolve their California claims only.  The

MEMO ISO FLSA SETTLEMENT APPROVAL, FINAL CERT, AUTH TO EFFECTUATE

compensation provided in those separate agreements do not duplicate or overlap the compensation provided in the proposed collective agreement.

On November 21, 2016, the Court denied the parties' previous motion for approval, expressing various concerns about the proposed terms. (Doc. 71). The parties recognize that several areas of concern resulted from their failure to properly explain the proposed settlement. The parties nonetheless have taken the Court's concerns to heart and have revised the proposed agreement accordingly. (Declaration of Alisa A. Martin ("Martin Decl."), Ex. A, revised agreement).

**Concern 1: Scope of Settlement and Release**

As mentioned above, three Settlement Members have California claims against Bask. The previous settlement sought to resolve the California claims. The Court however stated that it would not approve a settlement that resolved and released anything beyond FLSA claims and that any other claims could be addressed through individual settlements. As such, the revised settlement addresses and releases FLSA claims only. The three Settlement Members with California claims against Bask have resolved those claims through separate individual settlements.

**Concern 2: Uncertainty About Rule 23 Class Claims and PAGA Claims**

The previously settlement did not specify whether all non-FLSA claims will be dismissed upon approval of the proposed settlement. The revised agreement specifies that all other claims will be dismissed with prejudice because the three Settlement Members with California claims have entered into separate settlement agreements with Bask to resolve those claims as well.

**Concern 3:  Identity of the Opt-In Members**

The previous motion only provided a declaration identifying the Opt-In Members and the names listed in the declaration did not match the list of individuals who would receive compensation under the previous settlement. The Parties filed the executed Consent to Join Forms concurrently with this motion and

have explained the discrepancies between the lists in the supporting declaration of Bryan Benard and below in Section II(C).

### Concern 4:  Attorney's Fee Request

The Court found the previous $75,000 fee request to be unreasonable and indicated that the fees should not exceed 25% of the total compensation paid under the settlement. Ferreri's counsel believes that a lodestar method, as opposed to a percentage-of-award method, should be used to assess the reasonableness of the requested fees because the fees were negotiated separate from the collective compensation and because neither the previous settlement, nor the revised settlement, involves a common fund.  Nonetheless, Ferreri's counsel reduces their fee request to $9,500, which amounts to less than 25% of total compensation paid under this settlement to resolve FLSA claims.

### Concern 5: Incentive Fee Request

The Court found the previous $2,000 incentive award request to be unreasonable.  Ferreri no longer requests an incentive award.

Based on these revisions, the parties respectfully request the Court to approve the settlement and request for fees and costs.

## II.   BACKGROUND

### A.   Ferreri's Alleged Claims Against Bask

Bask provided remote technical support for homes and businesses. The individuals who provided this support to Bask's customers were called RTAs. Bask obtained RTAs through Field Nation, a third party company. Ferreri alleged that when RTAs worked for Bask, they had to work set shifts where they would have to be logged into their computers and ready to respond to Bask customers' calls for technical support, referred to as "tickets." Bask paid Field Nation $18 per completed ticket, and then Field Nation paid RTAs on a per ticket basis after deducting certain fees from the amount received from Bask. Bask and Field Nation treated RTAs as independent contractors and paid on a 1099 basis. (Martin Decl.,

¶ 2).

Ferreri alleged that the RTAs were misclassified as independent contractors instead of hourly employees and that the per ticket compensation structure resulted in the nonpayment of minimum wages and/or overtime wages. Ferreri further alleged that RTAs were entitled to compensation for the 6-hour training session that Bask required them to attend. To that end, Ferreri asserted FLSA claims and various claims against Bask under California's labor laws. Bask maintains that the individuals were properly classified as independent contractors rather than employees and denies that it ever employed the Settlement Members. (Martin Decl., ¶ 3).

Ferreri originally named Field Nation as a defendant, alleging that it operated as a joint-employer. Ferreri later determined through discovery that Field Nation operated more like Bask's payroll company and improperly deducted fees from his paycheck. Ferreri and Field Nation entered into a confidential settlement agreement in which Ferreri received $6,000 in exchange for a release of claims against Field Nation and the dismissal of Field Nation from this action with prejudice. (Martin Decl., ¶ 4). On April 7, 2016, the Court determined that the settlement between Ferreri and Field Nation was in good faith within the meaning of California Code of Civil Procedure sections 877 and 877.6. (Doc. No. 46).

**B.    Conditional Collective Certification**

The operative complaint asserts claims on behalf of all RTAs that worked for Bask under FLSA and California law. Ferreri's counsel moved to certify a collective action on behalf of all RTAs, regardless of whether the RTAs worked through Field Nation or some other third party entity. On April 8, 2016, the Court conditionally certified a FLSA collective, but limited the collective to those who worked through Field Nation:

> All persons who contracted with Field Nation, LLC, to perform work for Bask Technology, Inc. (formerly named iTOK, Inc.), or Bask/iTOK's customers, as a

4

MEMO ISO FLSA SETTLEMENT APPROVAL, FINAL CERT, AUTH TO EFFECTUATE

> Technical Advisor, Technical Support Representative, Support Technician or in any other similar position that provided remote technical services and were classified as an independent contractor within three years preceding the date of their decision to opt-in to this action. (Doc. No. 47)

The Court's limitation did not significantly impact the overall collective size because the majority of RTAs that worked for Bask during the relevant timeframe as independent contractors came through Field Nation. Plus, some of the other third party entities that provided RTAs to Bask only had a few RTAs, raising numerousity issues. (Martin Decl., ¶ 5).

At the Court's direction, notice and consent to join forms were mailed to 152 individuals. Thirty-four individuals consented to join the collective action. The names of these individuals are:

### Opt-In Names

1. Aaron DelBalzo
2. Adam Patterson
3. Ahamadu Massard
4. Bernard Honigfont
5. Blake Clausnitzer
6. Brandon Lineberry
7. William Kirsling (AKA Cody Kirsling)
8. Colby Stayton
9. Colten Wills
10. Daryl Mason
11. Dawn Wooten
12. George Shipe
13. Hardwick Powell
14. Jacob Adams
15. James Keenan Lake (AKA Nikki Raeburn)
16. Jason Kube
17. Jordan Moline
18. Julian Wilson
19. Lynne Stratford
20. Michael Jackson

**Opt-In Names**

21. Michael Marceau
22. Michael Vandamme
23. Nathan Tyree
24. Paul Simo
25. Rachel Grimm
26. Rachel Peterson
27. Ronald Toney
28. Shannel Thomas
29. Solita Green
30. Stanley Komarniski
31. William Keith Williams
32. Yvonne Henderson
33. John Thies
34. Tim Ryan (Martin Decl., ¶ 6).

**C.    Discovery, Settlement Discussions, And Settlement Conference**

After certification, the parties met and conferred over discovery issues including (1) the size of the potential collective members that fell outside of conditionally certified group (i.e. RTAs who worked for Bask through entities other than Field Nation) and (2) the size of the potential California class.  As for the former issue, the majority of RTAs that worked for Bask as independent contractors during the relevant timeframe came through Field Nation.  Plus, some of the other third party entities only provided a few RTAs to Bask, raising numerousity issues.   As for the former issue, the potential California class contained only a few members, again raising numerousity issues.  (Martin Decl., ¶ 7).

Taking all of that into consideration and to avoid expensive and protracted litigation, the Parties engaged in informal discovery and began arms' length negotiations and discussions.  These negotiations proved fruitful.  After several conference calls, and for settlement purposes, the Parties discussed a framework

MEMO ISO FLSA SETTLEMENT APPROVAL, FINAL CERT, AUTH TO EFFECTUATE

and method for calculating potential unpaid wages and penalties for Ferreri and each Opt-In Member and the amount of potential unpaid wages and penalties potentially owed to Ferreri and each Opt-In if they could prevail on showing that they were misclassified. This framework and method made individualized calculations for each Opt-In Member and Ferreri based on their own potential damages, which resulted in variations of potential recovery for each of them, and consisted of the following (Martin decl., ¶ 8):

- **Unpaid Training Hours**: All Opt-In Members were potentially entitled to compensation for six hours of unpaid training. Based on the actual logs, some Opt-In Members were only potentially entitled to damages for this training time and not for potential minimum wage or overtime.

- **Unpaid Minimum Wage**: This amount, if any, varied for each Opt-In Member, depending upon the number of hours each Opt-In Member was actually logged into Bask's system in a given week, the number of tickets the Opt-In Member processed during that week, and the amount of compensation paid to the Opt-In Member during the relevant invoice period. These amounts varied individually, as some Opt-In Members were never even potentially not paid minimum wage and as a result were not allocated any amounts for this.

- **Unpaid Overtime Wages**: This amount, if any, varied for each Opt-In Member, depending upon whether the Opt-In Members logged over 40 hours in Bask's system during a given week. These amounts varied individually, as some Opt-In Members never logged more than 40 hours in a given week. (*Id.*)

In light of the above discussions and individualized calculations, the Parties believed that a potential settlement could include (1) compensating Ferreri and

MEMO ISO FLSA SETTLEMENT APPROVAL, FINAL CERT, AUTH TO EFFECTUATE

each Opt-In Member based on their estimated unpaid wages as calculated above, and (2) compensating Ferreri for incurred costs. In order to get the parties to settlement, they agreed to participate in a Settlement Conference with Magistrate Judge Dembin to help come to an agreement on these issues, help determine payments to Ferreri and Opt-In Members, and help determine the amount of penalties, incentive award and attorney's fees, if any, to be paid under a potential settlement. (Martin Decl., ¶ 9).

At the Settlement Conference, the parties exchanged specific individualized calculations of potential damages and penalties to each other and to Judge Dembin. Discussions were held on the proper statute of limitations to apply, whether penalties or liquidated damages were appropriate to consider, the various risk factors for both parties, and related issues. The Parties came to agreement on the specific individualized calculations to be used and agreed to settlement payments with the assistance and recommendation of Judge Dembin.[1] Also with Judge Dembin's assistance, the Parties reached an agreement on attorney's fees. (Martin Decl., ¶10).

## III.   KEY SETTLEMENT TERMS

### A.   Payments To Settlement Members

#### 1.   Summary

The Settlement Members are receiving compensation based on a 3-year statute of limitations, as opposed to just a 2-year statute of limitations. Each Settlement Member will receive approximately 100% of their alleged estimated potential unpaid training hours, 100% of alleged potential estimated unpaid minimum wages under the applicable federal minimum wage rate (if their hourly compensation rate was less than minimum wage during a workweek), 100% of

---

[1] The Parties also agreed to compensate all the three California Opt-Ins on their California claims as well. The Parties originally tried to do this in their previous settlement agreement, which the Court rejected, and are now doing this under separate individual settlement agreements.

their alleged estimated potential unpaid overtime (if they worked over 40 hours during a workweek), and approximately 50% of potential liquidated damages for unpaid minimum wages under 29 U.S. Code § 216. (Martin Decl., ¶ 11). Payment amounts are broken down as follows, as provided in the agreement itself:

| Opt-In Member Name (3 Year Statute of Limitations) | Alleged Unpaid Training Hours | Potential Unpaid Minimum Wages | Potential Unpaid Overtime | 50% Liquidated Damages | Settlement Amount |
|---|---|---|---|---|---|
| D'Angelo Ferreri | $43.50 | $91.75 | $268.78 | $202.01 | $606.04 |
| Aaron DelBalzo | $43.50 | $0 | $0 | $21.75 | $65.25 |
| Adam Patterson | $43.50 | $0 | $88.25 | $65.88 | $197.63 |
| Ahamadu Massard | $43.50 | $144.97 | $117.10 | $152.78 | $458.35 |
| Bernard Honigfont | $43.50 | $27.90 | $804.66 | $438.03 | $1,314.09 |
| Blake Clausnitzer | $43.50 | $0 | $68.03 | $55.77 | $167.30 |
| Brandon Lineberry | $43.50 | $257.26 | $28.87 | $164.81 | $494.44 |
| William Kirsling (AKA Cody Kirsling) | $43.50 | $0 | $418.83 | $231.16 | $693.49 |
| Colby Stayton | $43.50 | $462.41 | $2.72 | $254.32 | $762.95 |
| Colten Wills | $43.50 | $0 | $269.53 | $156.52 | $469.55 |
| Daryl Mason | $43.50 | $141.89 | $222.34 | $203.86 | $611.59 |
| Dawn Wooten | $43.50 | $38.37 | $89.09 | $85.48 | $256.44 |
| George Shipe | $43.50 | $266.90 | $41.67 | $176.03 | $528.10 |
| Hardwick Powell | $43.50 | $0 | $0 | $21.75 | $65.25 |
| Jacob Adams | $43.50 | $73.16 | $27.29 | $71.97 | $215.92 |
| James Keenan Lake (AKA Nikki Raeburn) | $43.50 | $19.23 | $75.03 | $68.88 | $206.64 |
| Jason Kube | $43.50 | $279.56 | $0 | $161.53 | $484.59 |
| Jordan Moline | $43.50 | $90.11 | $0 | $66.80 | $200.41 |
| Julian Wilson | $43.50 | $0 | $0 | $21.75 | $65.25 |
| Lynne Stratford | $43.50 | $6,368.31 | $1,610.71 | $4,011.26 | $12,033.78 |
| Michael Jackson | $43.50 | $413.05 | $375.61 | $416.08 | $1,248.24 |
| Michael Marceau | $43.50 | $0 | $0 | $21.75 | $65.25 |
| Michael Vandamme | $43.50 | $313.86 | $71.39 | $214.37 | $643.12 |
| Nathan Tyree | $43.50 | $0 | $39.46 | $41.48 | $124.44 |
| Paul Simo | $43.50 | $0 | $123.59 | $83.55 | $250.64 |
| Rachel Grimm | $43.50 | $447.14 | $486.59 | $488.61 | $1,465.84 |

| Opt-In Member Name (3 Year Statute of Limitations) | Alleged Unpaid Training Hours | Potential Unpaid Minimum Wages | Potential Unpaid Overtime | 50% Liquidated Damages | Settlement Amount |
|---|---|---|---|---|---|
| Rachel Peterson (misspelled as Patterson) | $43.50 | $9.52 | $765.78 | $409.40 | $1,228.20 |
| Ronald Toney (misspelled as Terry) | $43.50 | $0 | $0 | $21.75 | $65.25 |
| Shannel Thomas | $43.50 | $0 | $168.43 | $105.97 | $317.90 |
| Solita Green | $43.50 | $0 | $49.15 | $46.33 | $138.98 |
| Stanley Komarniski | $43.50 | $34.28 | $1,010.60 | $544.18 | $1,632.56 |
| William Keith Williams | $43.50 | $0 | $63.02 | $53.26 | $159.78 |
| Yvonne Henderson | $43.50 | $0 | $0 | $21.75 | $65.25 |
| John Thies | $43.50 | $0 | $55.93 | $49.71 | $149.14 |
| Tim Ryan | $43.50 | $2,477.89 | $1,081.01 | $1,801.20 | $5,403.60 |
| **Total** | | | | | $32,855.27 |

The Court noted in its November 21, 2016 Order that the actual Consents to Join had not been filed with the Court and also noted a few inconsistencies in the names listed in the Declaration of Ms. David and the charts the parties included. Concurrently with the filing of this Joint Motion for Approval of Settlement, the parties are filing 34 consent forms (alphabetical by first name), which create the Opt-In Members in addition to the Ferreri. The settlement payment chart above and attached to the proposed settlement agreement begins with Ferrerri the Ferreri and then includes the 34 Opt-In Members. (Declaration of Bryan Benard ("Benard Decl."), ¶5).

The inconsistencies have been identified and remedied. First, the prior chart listed "Cody" Kirsling, whose given name is William Kirsling (as signed on the consent form). They are the same person. The settlement chart now lists William Kirsling (AKA Cody Kirsling). Second, Ms. David listed the names Rachel Patterson and Rachel Peterson. This was an oversight. There is no Rachel Patterson involved in this matter. Rachel Peterson is the proper party and has

signed a consent, which is being filed. Third, Ms. David had listed "Nikki Raeburn" on her list. At the relevant time, Ms. Raeburn was known as James Keenan Lake and therefore, has been listed in the Settlement Chart as James Keenan Lake and the consent form has been filed as James Keenan Lake. Finally, there was a typo in the Settlement Chart listing a Ronald "Terry" where Ms. David listed Ronald "Toney." Toney is the proper spelling and this discrepancy has been corrected and Mr. Toney has filed a consent. This should resolve discrepancies between the list of individuals who submitted Consent to Join forms and the list of individuals that will receive compensation under proposed settlement. (Benard Decl., ¶6-9).

### 2.   Calculations

#### a)   Alleged Unpaid Training Hours

All Settlement Members attended 6 hours of training. To determine the alleged unpaid training wages, the Parties multiplied six hours by the applicable minimum wage rate. (Martin Decl., ¶ 12).

| | | | | |
|---|---|---|---|---|
| **6 Hours** | **X** | **$7.25** | **=** | **$43.50** |

#### b)   Alleged Unpaid Minimum Wage

The Parties reviewed data showing the number of hours each Settlement Member was logged onto Bask's system per day. The Parties also reviewed invoices showing the amount actually paid to each Settlement Member. To determine if a Settlement Member was paid less than minimum wage during a workweek, the Parties divided the amount actually paid during the workweek by the number of hours logged into Bask's system to determine the potential hourly rate for that week. (Martin Decl., ¶ 13).

| Amount Paid | ÷ | # Hours Worked | = | Hourly Rate |

If hourly rate was $7.25 or above, then minimum wages were not even conceivably owed for that week.  But if the hourly rate was below $7.25, then minimum wages were potentially owed for that week.  The Parties calculated the amount of minimum wages potentially owed by multiplying the number of hours worked that week by $7.25.  Because Settlement Members already received some compensation during weeks in which they were paid below minimum wage, the Parties calculated the amount of potential unpaid minimum wages by subtracting the amount of wages paid from the amount of potential wages owed. (Martin Decl., ¶ 13).

| Hours Worked | x | $7.25 | = | Amount Owed |

| Amount Owed | - | Amount Paid | = | Unpaid Minimum Wages |

c) <u>Alleged Unpaid Overtime</u>

To calculate unpaid overtime, the Parties looked at the number of hours Settlement Members were logged into Bask's system during a workweek.  If the hours exceeded 40, then the parties multiplied the number of hours exceeding 40 by $3.63 ($7.25 x 0.5) to determine the amount of potential unpaid overtime for that workweek.   The parties used 0.5 instead of 1.5 for the overtime rate since potential straight time was already calculated in subsection 2 above. (Martin Decl., ¶ 14).

| # Hours > 40 | x | $3.63 | = | Unpaid Overtime |

### d) Liquidated Damages

Under 29 U.S. Code § 216(b), liquidated damages is an amount equal to unpaid minimum wages and overtime. The proposed settlement compensates Settlement Members approximately 50% of potential liquidated damages, which is approximately 50% of the estimated potential unpaid training, minimum and overtime wages. (Martin Decl., ¶ 15). Given the risks involved and the potential for not establishing liability at all, this was a compromise calculation.

| Total Unpaid Wages | x | 50% | = | Liquid Damages Under Settlement |
|---|---|---|---|---|

### 3. Payment Classification

Bask maintains that the individuals were properly classified as independent contractors rather than employees, denies that it ever employed the Settlement members, and no longer has any service relationship with these individuals as RTAs through Field Nation. The Individual Settlement Payments will be paid to the Settlement Members for services rendered as independent contractors, for which an IRS Form 1099 will be issued, as Bask denies that the Settlement Members were ever employed by Bask. Settlement Members individually shall be responsible for payment of any taxes attributable to their own Individual Settlement Payment. (Martin Decl., Ex. A, ¶ 2(A).

### B. Release and Covenant Not to Sue

In exchange for the settlement payment, the Settlement Agreement requires Opt-In Members to agree to a specific release, which extends to claims under FLSA only. The specific release reads as follows:

> **Release**. Conditioned upon Court approval of the settlement and dismissal of the case with prejudice, Plaintiff and Opt-In Members, individually and in their

1
2
3
4
5
6
7
8
9
10
11
12

representative collective capacity, for themselves and their heirs, successors, assigns, personal representatives, executors, legal representatives, spouses, agents, insurers, and attorneys, do hereby release and discharge Defendant and its current and former parents, subsidiaries, affiliates, successors, predecessors, assigns, officers, directors, shareholders, associates, employees, agents, insurers, attorneys, and representatives (collectively, "the Released Parties"), of and from any and all claims asserted, or which could have been asserted, in the Action under FLSA, including all rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind (including any and all claims or demands for attorneys' fees and costs), whether known or unknown, whether anticipated or unanticipated, that arose or accrued arose or accrued at any time during the period from June 1, 2012, through the date of this Agreement, for any type of wages, overtime, hours worked, misclassification as independent contractors, premium pay, damages, statutory damages, liquidated damages, unpaid costs, statutory penalties, civil penalties, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief ("Released Claims").

13
14
15

**Exclusion**. Any and all claims under the California law, including California Business and Professions Code, California Labor Code, including PAGA, are excluded from the Released Claims.

16
17

**Covenant Not to Sue**. Plaintiff and Opt-In Members further covenant not to sue Defendant or the Released Parties for any of the Released Claims. (Martin Decl., Ex. A, ¶ 3).

18
19

**C.    Dismissal of All Remaining Claims**

20
21
22
23
24
25
26

Upon approval of this revised proposed settlement, Ferreri will request the Court to dismiss all remaining claims. These claims concern unpaid wages under California law. Ferreri's counsel formally represents the three Settlement Members with California claims against Bask. Those members have entered into separate settlement agreements with Bask to resolve their California claims only. The compensation provided in those separate agreements do not duplicate or overlap the compensation provided in the proposed collective agreement. (Martin Decl., ¶ 1(K)).

27

**D.    Procedures For Informing Opt-In Members About Settlement**

28

**and Distributing Settlement Checks**

Within 14 days from the date the Court approves the settlement and dismisses with case with prejudice, Bask will mail out to each Settlement Member a notice letter with an enclosed settlement check. Bask will concurrently pay to Ferreri's counsel all Court awarded fees and costs. Settlement Members will have at least 180 days to negotiate their checks. If any mailings are returned or otherwise undeliverable, the parties will work together to try to locate any Settlement Members, if necessary. If the parties are unsuccessful in delivering a check to a Settlement Member, then Bask will hold onto the check for at least 180 days from the date of issuance. If a Settlement Member whose check was undeliverable fails to claim the check within 180 days or if a Settlement Member fails to cash a check within 180 days from the date of issuance, Bask will tender the unclaimed amount to the appropriate state's office, department or division for unclaimed property. (Martin Decl., Ex. A, ¶ 5).

## IV.   APPROVAL OF THE PROPOSED SETTLEMENT IS WARRANTED

### A.   Standard

The FLSA protects workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). An employee's right to fair payment "cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Id.* at 740 (internal quotation marks omitted). So FLSA collective action settlements require court approval. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).

The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval. Most courts, however, first consider whether the named plaintiffs are "similarly situated" to the putative class members within the meaning of 29 U.S.C. § 216(b) (providing

MEMO ISO FLSA SETTLEMENT APPROVAL, FINAL CERT, AUTH TO EFFECTUATE

that an aggrieved employee may bring a collective action under the FLSA on behalf of himself and "other employees similarly situated"). If the collective action members are similarly situated, most courts then evaluate the settlement under the standard established by the Eleventh Circuit, which requires the settlement to constitute "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores,* 679 F.2d at 1355. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues…that are actually in dispute," the district court may "approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores,* 679 F.2d at 1354. Where, as here, the litigation arises from a private enforcement action under Section 216(b) of the FLSA, 29 U.S.C. § 216(b), the standard for approval is straightforward: "if the settlement reflects 'a fair and reasonable resolution of a *bona fide* dispute,' the court may approve it." *Deane v. Fastenal Co.*, 2013 U.S. Dist. LEXIS 163330, *7 (N.D. Cal. Nov. 14, 2013) (quoting *Lynn's Food Stores*, 679 F.2d at 1354-55). The parties' proposed settlement should be approved as it reflects a reasonable compromise of the parties' claims and defenses, considering all of the risks and the limited assets available to satisfy a settlement or judgment.

## B.   Settlement Members Are Similarly Situated

The court has previously determined that the collective members are similarly situated and conditionally certified the collective action. (Doc. 47 at 8). Nothing has changed about the settlement group that would undermine the Court's previous ruling. (*See* Doc. No. 47 at 6). The proposed settlement is on behalf of the conditionally certified collective members who opted-in. Thus, the Court should finally certify this collective action for settlement purposes only. *Otey v. Crowdflower, Inc.*, Case No. 12-cv-05524-JST, 2015 U.S. Dist. LEXIS 86712 *14 (N.D. Cal. July 2, 2015) (when evaluating an unopposed motion for approval of a FLSA collective action settlement, Hon. Tigar indicated that additional certification analysis is not necessary if the Court already conditionally certified

1 the collective action and found that the collective members are similarly situated).

### C.   Bona Fide Dispute Existed

The proposed settlement is a product of contested litigation. Ferreri pled detailed factual allegations describing Bask's alleged misclassification practices. (Doc. Nos. 1, 30, 34). Bask denied Ferreri's allegations and asserted an array of affirmative defenses. (Doc. Nos. 4, 44, 49). Ferreri moved for conditional certification and presented evidence to support the motion. (Doc. Nos. 32) Bask opposed the motion with its own evidence. (Doc No. 35). After the Court granted Ferreri's motion in part, the parties briefed a discovery dispute. (Doc. No. 48). Soon thereafter, the parties participated in informal discovery and explored settlement negotiations. Although the parties were able to work together to determine the amount of potential unpaid wages if the Settlement Members were in fact misclassified and agreed that any settlement would include the payment of this amount, the parties disputed the applicable statutes of limitation and whether liquidated damages and penalties were warranted, and if so, how much should be paid in the settlement. Bask argued that the liquidated damages and penalties were unwarranted because, among other things, Bask did not act willfully and had a good faith belief that its actions were lawful. Ferreri however argued that liquidated damages and penalties were warranted, justified, and thus, should be subjected to minimal discount, if any. The parties argued their respective positions to Hon. Dembin who assisted them with reaching the proposed settlement. (Martin Decl., ¶ 10). Thus, the proposed settlement was the product of a *bona fide* dispute and vigorously contested litigation.

### D.   Fair and Reasonable Settlement Agreement

In evaluating a proposed FLSA settlement, a district court must determine whether the settlement reflects "a fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1355. To determine whether a settlement is fair and reasonable, district courts implicitly or explicitly consider the factors

1  that are used to evaluate Rule 23 class action settlements, which include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998).

These factors establish that the proposed settlement is fair and reasonable.

### 1.    The Strength of The Case

As argued in Ferreri's motion for conditional certification, Ferreri believes Bask's own documents show that they misclassified RTAs through Field Nation as independent contractors. (Doc. No. 32). Bask disagrees that it misclassified RTAs and presented evidence to the contrary. (Doc. No. 35). Although the parties are each confident in their respective positions, the parties are keenly aware of risks and costs associated with continued litigations.

### 2.    The Risk, Expense, Complexity, and Likely Duration

Bask is not a large company and recognizes the potential financial impact protracted litigation or judgments can have on a business. Continued litigation would be extensive since misclassification claims involve a multi-factor, fact intensive analysis, which may involve expert testimony. If the parties continued litigating this case, this case would likely not be ready for trial until at least two years from now, since the parties would still have to go through, for example, the final certification/decertification process and motion for summary judgment process. Because the settlement provides the Settlement Members to receive approximately 75% of their estimated potential damages and because there is a real risk that the Settlement Members may not prevail at trial, the settlement makes sense.

### 3.    Continued Litigation Involves Risk of Decertification

Bask maintains that if forced to continue with litigation, it will file a motion

to decertify the conditionally certified collective action. Ferreri believes that he will be able to maintain certification. Nonetheless, the parties recognize that continued litigation always carries risks for both sides.

### 4. Settlement Members Receive Fair and Appropriate Compensation

The settlement compensates the Settlement Members approximately 100% of their estimated potential unpaid training wages, 100% of their estimated potential minimum wages, approximately 100% of their estimated potential unpaid overtime, and approximately 50% of their estimated potential liquidated damages and penalties. The settlement also covers fees and costs, which does not reduce or otherwise diminish compensation paid to the Settlement Members.

### 5. Significant, Targeted Discovery Completed

This case is still in a relatively early stage of litigation. After notice of the conditionally certified collective action was mailed, Ferreri propounded discovery and noticed a personal most knowledgeable deposition. The parties thereafter conducted informal discovery and obtained sufficient information to allow them to assess potential damages for each Settlement Members. After the parties had adequate information to determine potential damages, the parties participated in a Court-sponsored settlement conference with Honorable Dembin and with his help, reached the proposed settlement. (Martin Decl., ¶ 10).

### 6. Counsel's Experience and Views

During this relatively brief, but highly-contested litigation, Ferreri's counsel gained comprehensive knowledge of the facts, legal issues and risks relating to the respective claims and defenses and acquired ample evidence on which to assess the proposed settlement. Based on their knowledge of the facts and the applicable law, as well as their extensive experience in representative and class litigation, Ferreri's counsel believes the settlement is fair, reasonable, and adequate. (Martin Decl., ¶ 11). "Courts give weight to counsels' opinions regarding the fairness of a

MEMO ISO FLSA SETTLEMENT APPROVAL, FINAL CERT, AUTH TO EFFECTUATE

settlement, when it is negotiated by experienced counsel." *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 2011 U.S. Dist. LEXIS 11676, *28-29 (C.D. Cal. Jan. 27, 2011); *In re Wash. Pub Power Supply Sys. Sec. Litig.*, 720 F.Supp. 1379, 1387 (D. Ariz. 1989) ("Counsel's opinions warrant great weight both because of their considerable familiarity with this litigation and because of their extensive experience in similar actions."). Bask's counsel concurs that the settlement is fair, reasonable and adequate.

### 7.    No Presence of a Governmental Participant

No government entity participated as a party to this case. However, Hon. Dembin assisted the parties with reaching a settlement.

### 8.    Settlement Members React Positively to the Settlement

Ferreri's counsel spoke with several Settlement Members about this settlement. They were excited about the settlement and looking forward to receiving money from the settlement. No one expressed anything negative about the settlement. (Martin Decl., ¶ 16).

## V.    REQUESTED FEES ARE REASONABLE

The FLSA provides for such agreements to include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). The Ninth Circuit allows the Court to employ the lodestar method for calculating attorneys' fees where the defendant agrees to pay attorneys' fees separately from the class' relief and not from a common fund. *See Fleury v. Richemont N. Am. Inc.,* No. C-05-4525 EMC, 2008 WL 3287154, at *3 (N.D. Cal. Aug. 6, 2008).  Alternatively, or as a cross-check, the Court may use percentage-of-recovery method. *See e.g. Selk v. Pioneers Memorial Healthcare Dist,* 159 F. Supp. 3d 1164 (2016) (evaluating FLSA settlement using percentage-of-recovery method). Under the settlement, Bask agrees to pay Ferreri's counsel, subject to Court approval, $9,500 in fees and

MEMO ISO FLSA SETTLEMENT APPROVAL, FINAL CERT, AUTH TO EFFECTUATE

$1,352.82 in costs. (Martin Decl., Ex. A, ¶ 2(B)).  A fee award is warranted here because Ferreri's counsel onbtained an excellent result for the FLSA members that chose to participate in the case. The parties negotiated a fair settlement and only discussed the fees after resolving the compensation to be paid to the collective members.  (Martin Decl., ¶¶ 6-10).  The requested fees are far less than Ferreri's counsel's lodestar and represents less than 25% of the total funds to be paid under the proposed FLSA settlement.  (Martin Decl., ¶¶ 22-28).

## VI.   REQUESTED COSTS ARE REASONABLE

Under the proposed settlement, Counsel seeks to recover costs associate with prosecuting the collective members claims. The costs total $1,352.82 and cover filing fees, service fees, research fees, mailing costs, and copying costs. (Martin Decl., ¶ 29). The costs are reasonable and necessary and are of the sorts that are typically billed to paying clients in the marketplace. The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of class action settlements. *See Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003); *see also* 4 Newberg & Conte, Newberg on Class Actions §12.08, at 50-51 (2d ed. 1993). "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F.Supp.2d 1036, 1048 (N.D. Cal. 2008); *see also Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994).

## VII.  CONCLUSION

The parties respectfully request that the Court (1) approve the settlement under the FLSA; (2) dismiss this entire action with prejudice; and (3) retain jurisdiction to enforce the settlement agreement by issuing an Order that explicitly retains jurisdiction to enforce the agreement pursuant to *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 381-82 (1994).

DATED: December 19, 2016          HOLLAND & HEART

                                  By: /s/ Bryan K. Benard
                                  _____
                                    Bryan K. Benard
                                    Attorneys for Defendant
                                    BASK TECHNOLOGY, INC.ITOK LLC


DATED:  December 19, 2016          AMARTIN LAW

                                  SAN DIEGO COUNTY LAW OFFICES

                                  By:  /s/ Alisa A. Martin
                                  _____
                                    Alisa A. Martin
                                    Attorney for Plaintiff
                                    D'ANGELO FERRERI

MEMO ISO FLSA SETTLEMENT APPROVAL, FINAL CERT, AUTH TO EFFECTUATE