UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D'ANGELO FERRERI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BASK TECHNOLOGY, INC. (formerly named iTOK, INC.), a corporation; and FIELD NATION, LLC, a limited liability company,,<br><br>Defendants. | Case No.: 15-CV-1899-CAB-MDD<br><br>**ORDER APPROVING SETTLEMENT OF FLSA CLAIMS**<br><br>[Doc. Nos. 76] |

This matter is before the Court on the parties' Joint Motion for FLSA Collective Action Settlement Approval.  For the reasons stated below, and because the instant motion and revised settlement agreement adequately address the deficiencies identified by the Court in its order denying approval of the parties' first attempt at settlement, the motion is granted.

**I.     Background**

Defendant Bask Technology, Inc. provides remote technical support for homes and businesses. According to the SAC, the specific individuals who provided this support for Bask's customers are called Remote Technical Advisors ("RTAs"). In September 2013, Plaintiff D'Angelo Ferreri contacted Bask about becoming a RTA. Bask allegedly told Ferreri that he could become an RTA, but that he had to go through Defendant Field Nation,

LLC. Field Nation is one of several third-parties that Bask used to obtain RTAs to perform the support work for Bask's customers. Ferreri proceeded to apply with Field Nation and eventually became an RTA for Bask, which entailed logging into his computer and responding to Bask customers' calls for technical support, referred to as "tickets." Bask paid Field Nation $18 per completed ticket, and Field Nation would pay Ferreri on a per ticket basis after deducting certain fees from the amount received from Bask. Ferreri was classified as independent contractor and paid on a 1099 basis.

The Second Amended Complaint ("SAC") alleges that Ferreri and all RTAs who performed work for Bask customers were improperly classified as independent contractors instead of employees and as a result not paid a minimum wage or overtime. To that end, the SAC asserts two FLSA claims and various claims under California's labor laws on behalf of Ferreri and one putative FLSA collective and two putative Federal Rule of Civil Procedure 23 classes. In addition to Bask, the complaint named Field Nation, LLC, as a defendant. The SAC estimated the existence of "at least a few hundred RTAs" as class members and alleged that the amount in controversy exceeded $5 million. [Doc. No. 34 at ¶¶ 5, 22.] In or around February 2016, Ferreri settled with Field Nation for a payment of $6,000.

On February 24, 2016, Plaintiff filed a motion for conditional certification of a collective action for the two FLSA claims consisting of all RTAs who performed worked for Bask through any third party contractor (not limited to Field Nation) and were classified as independent contractors. The motion contained a proposed notice to potential collective members which specified that "Plaintiff also asserts claims under California law, but those claims are not subject to this notice." [Doc. No. 32-2 at 2.] The Court granted the motion in part, conditionally certifying a significantly narrower collective than the one sought by Plaintiff. The collective included:

> All persons who contracted with Field Nation, LLC, to perform work for Bask Technology, Inc. (formerly named iTOK, Inc.), or Bask/iTOK's customers, as a Technical Advisor, Technical Support Representative, Support

> Technician or in any other similar position that provided remote technical services and were classified as an independent contractor within three years preceding the date of their decision to opt-in to this action.

After conditional certification, notice was provided to the 152 potential members of the collective, and 34 individuals opted into the collective.

Also on October 14, 2016, Ferreri filed the motions seeking approval of a "Collective Action Settlement Agreement and Release" and attorneys' fees. The Court denied the motions on account of numerous deficiencies that precluded a finding that the settlement was a fair and reasonable resolution of a bona fide dispute over FLSA requirements. [Doc. No. 71.] That order gave the parties until December 19, 2016, to file a new motion for approval of a settlement that addressed the deficiencies identified in the Court's opinion.

Consistent with the Court's order, on December 19, 2016, the parties filed the instant motion seeking approval of the "Collective Action Settlement Agreement and Release" and attorneys' fees and costs. The settlement agreement purports to be between Bask and Ferreri, "on behalf of himself and all those who opted-in to the conditionally certified collective action by executing a Consent to Join Form." [Doc. No. 76-3 at 1.] With the motion, Ferreri also filed executed Consent to Join forms by 34 individuals. [Doc. No. 76-5.]

According to the settlement agreement, Bask has agreed to pay $32,855.27 to the settlement members for their claims, $9,500 to Plaintiff's counsel for fees, and $1,352.82 to Plaintiff's counsel in costs. The agreement includes an exhibit specifying the amount each settlement member would receive under the settlement for potential unpaid training hours, potential unpaid minimum wage, potential unpaid overtime, and liquidated damages. The motion and Declaration of Alisa A. Martin specifies how those amounts were calculated. [Doc. No. 76-2 at 11-13; Doc. No. 76-3 at ¶¶ 12-15.] In exchange for these payments, the settlement agreement contains the following release and covenant not to sue:

**Release**. Conditioned upon Court approval of the settlement and dismissal of the case with prejudice, Plaintiff and Opt-In Members, individually and in their representative collective capacity, for themselves and their heirs, successors, assigns, personal representatives, executors, legal representatives, spouses, agents, insurers, and attorneys, do hereby release and discharge Defendant and its current and former parents, subsidiaries, affiliates, successors, predecessors, assigns, officers, directors, shareholders, associates, employees, agents, insurers, attorneys, and representatives (collectively, "the Released Parties"), of and from any and all claims asserted, or which could have been asserted, in the Action under FLSA, including all rights, demands, charges, complaints, causes of action, obligations, or liability of any and every kind (including any and all claims or demands for attorneys' fees and costs), whether known or unknown, whether anticipated or unanticipated, that arose or accrued arose or accrued [*sic*] at any time during the period from June 1, 2012, through the date of this Agreement, for any type of wages, overtime, hours worked, misclassification as independent contractors, premium pay, damages, statutory damages, liquidated damages, unpaid costs, statutory penalties, civil penalties, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief ("Released Claims").

**Exclusion**. Any and all claims under California law, including California Business and Professions Code, California Labor Code, including PAGA, are excluded from the Released Claims.

**Covenant Not to Sue**. Plaintiff and Opt-In Members further covenant not to sue Defendant or the Released Parties for any of the Released Claims.

[Doc. No. 76-3 at 5.]

## II. Legal Standard

"The FLSA, 29 U.S.C. § 201 et seq., was enacted 'to protect all covered workers from substandard wages and oppressive working hours.'" *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999) (quoting *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). "The FLSA's minimum wage and overtime provisions are central among the protections the Act affords to workers. Section 6 of the FLSA mandates payment of a minimum wage and section 7 sets maximum hours ('the overtime limit'), which, when exceeded, requires the payment of overtime wages." *Id.* (citing 29 U.S.C. §§ 206, 207)). "An employer who violates the FLSA 'shall be liable to the employee or

employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Flores v. City of San Gabriel*, 824 F.3d 890, 904–05 (9th Cir. 2016) (quoting 29 U.S.C. § 216(b)).

"Settlement of an FLSA claim, including a collective action claim, requires court approval." *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-cv660-HSG, 2016 WL 4073336, at *4 (N.D. Cal. Aug. 1, 2016); *see also Dunn v. Teachers Ins. & Annuity Assoc. of Am.*, No. 13-cv-5456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) ("Most courts hold that an employee's overtime claim under FLSA is non-waivable and, therefore, cannot be settled without supervision of either the Secretary of Labor or a district court."). Because the Ninth Circuit has not established a standard for district courts to follow when evaluating an FLSA settlement, California district courts frequently apply the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982). *Dunn*, 2016 WL 153266, at *3. Under that standard, the relevant considerations are whether the named plaintiff is "similarly situated" to the collective members and whether the settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 29 U.S.C. § 216(b); *Lynn's Food Stores*, 679 F.2d at 1355; *see also Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319 L(MDD), 2014 WL 3924609, at *1 (S.D. Cal. Aug. 11, 2014) ("A district court may approve an FLSA settlement if the proposed settlement reflects 'a reasonable compromise over [disputed] issues.'") (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

Although the standard for approving FLSA collective actions may be nominally different from the standard for approving class actions under Federal Rule of Civil Procedure 23, "many courts begin with the well-established criteria for assessing whether a class action settlement is fair, reasonable and adequate under [Rule] 23(e) and reason by analogy to the FLSA context." *Millan v. Cascade Water Servs., Inc.*, No. 1:12-cv-1821-AWI-EPG, 2016 WL 3077710, at *3 (E.D. Cal. Jun. 2, 2016) (internal quotation marks omitted); *see also Otey v. Crowdflower, Inc.*, No. 12-cv5524-JST, 2014 WL 1477630, at

*11 (N.D. Cal. Apr. 15, 2014) ("[T]he factors that courts consider when evaluating a collective action settlement are essentially the same as those that courts consider when evaluating a Rule 23 settlement.").[1] Those Rule 23 criteria include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Otey*, 2014 WL 1477630, at *4 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

### III.   Discussion

The revised proposed settlement submitted by the parties here adequately remedies all of the deficiencies identified in the Court's order denying approval of the prior settlement. To that end, the settlement reflects a reasonable compromise over disputed FLSA issues.

#### A.   Bona Fide Dispute

The settlement agreement resolves a "bona fide dispute" concerning potential liability under the FLSA. *Lynn's Food Stores,* 679 F.2d at 1355. As illustrated in the pleadings and various briefings submitted to the Court in the course of this litigation, (Doc. Nos. 1, 30, 34, 44, 49), the case involves genuinely disputed issues, including, for example, whether RTAs were employees or independent contractors.

#### B.   Fair and Reasonable Settlement Agreement

In evaluating a proposed FLSA settlement, the Court finds that the settlement is fair

---

[1] *But see Selk v. Pioneers Mem. Healthcare Dist.*, 159 F.Supp. 3d 1164, 1173 (S.D. Cal. 2016) (evaluating an FLSA settlement using a totality of the circumstances approach "that replicates the factors relevant to Rule 23 class actions where appropriate, but adjusts or departs from those factors when necessary to account for the labor rights at issue.")

and reasonable considering: the discovery the parties conducted to assess potential damages if liability could have been established; the relief provided to the Settlement Members; the advantage of obtaining immediate results rather than waiting, possibly for years, for an uncertain result; the conservation of resources through the avoidance of further costly litigation; the risk of no recovery if Ferreri and the collective lost at trial or won an uncollectable judgment; and counsel's experience and opinion that the settlement is fair and reasonable.

### C.     Attorney's Fees and Costs

Pursuant to the FLSA, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "The 'case law construing what is a "reasonable" fee applies uniformly' to all federal fee-shifting statutes." *Haworth v. State of Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" to determine a reasonable attorney's fee. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1042, 1047 (9th Cir. 2002); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."). Thus, courts frequently use the percentage-of-recovery method either by itself or in conjunction with confirming that the lodestar is consistent with the 25% percentage-of-recovery benchmark to determine the reasonableness of fees for FLSA common fund settlements. *See, e.g., Selk*, 159 F.Supp. 3d at 1180 (evaluating FLSA settlement fee award using percentage-of-recovery method); *Jones v. Agilysis, Inc.*, No. C 12-03516 SBA, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (approving fee award as consistent with the 25% "benchmark"); *Otey*, 2014 WL 1477630, at *7-8 (analyzing fees using lodestar and percentage of recovery methods).

Here, the settlement agreement provides for a payment of $9,500.00 in attorneys' fees and $1,352.82 in costs, which amounts equal approximately 25% of the total amount to be paid by Bask. As this amount is consistent with the Ninth Circuit benchmark for common fund settlements and is well below what Plaintiff's counsel have claimed is their lodestar, the Court approves of this aspect of the settlement as well.

### D. Settlement Notice and Check Distribution

The Court finds that the proposed notice, Doc. No. 76-3 at 14-15, Martin Decl., Ex. A (Ex. 2), and the process for distributing the notice and settlement checks are fair and adequate. [Doc. No. 76-3 at 6.]

### IV. Conclusion

For the foregoing reasons, it is hereby **ORDERED** as follows:

1. The parties' settlement, on a collective basis, of the FLSA claims asserted in the SAC is approved;
2. The Court finally certifies the conditionally certified collective action for settlement purposes;
3. The settlement notice is approved;
4. The Court appoints the law firms of AMartin Law, PC and San Diego County Law Offices as collective counsel;
5. The Court approves attorneys' fees in the amount of $9,500.00 and costs in the amount of $1,352.82; and
6. A notice of dismissal of the remaining non-FLSA claims in the SAC shall be filed on or before **January 3, 2017**.

It is **SO ORDERED**.

Dated: December 28, 2016

_____
Hon. Cathy Ann Bencivengo
United States District Judge